## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Watson Laboratories, Inc., et al., | CIVIL ACTION:  2:16-cv-05599 |
| *Plaintiffs*, | |
| v. | |
| Federal Trade Commission, | |
| *Defendant.* | |

## **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  BACKGROUND ...................................................................................3

III. PLAINTIFFS HAVE A CAUSE OF ACTION UNDER EITHER
     THE DJA OR, IN THE ALTERNATIVE, THE APA ...................................5

     A.   Because There Is a Concrete Case and Controversy Under The
          FTC Act, the DJA Allows Plaintiffs To Bring This Action.................5

     B.   In the Alternative, Plaintiffs May Proceed Under the APA...............10

          1.   The FTC's Decision To Sue Plaintiffs Is Final Agency
               Action.......................................................................................11

          2.   Plaintiffs Have No Other Adequate Remedy in Court ............14

          3.   Plaintiffs' Action Is Ripe .........................................................15

IV.  PLAINTIFFS' ACTION IS JUSTICIABLE ................................................18

V.   DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF
     EXERCISING JURISDICTION TO HEAR THIS ACTION.......................19

     A.   The FTC Is Guilty of Procedural Fencing, Not Plaintiffs..................20

     B.   The Remaining *Reifer* Factors Support Maintaining the Action ........22

          1.   This Action Can Prevent Piecemeal Litigation........................22

          2.   There Is No Pending State Court Proceeding ...........................22

          3.   This Action Is Efficient, Convenient and in the Public
               Interest.....................................................................................23

          4.   This Action Was Filed Before the FTC's California
               Action, and Judge Orrick Has Stated He Is Inclined To
               Defer to This Court ...................................................................24

VI.  CONCLUSION...................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner,*
        387 U.S. 136 (1967)......................................................................14, 16, 17

*Audubon Life Insurance Co. v. FTC,*
        543 F. Supp. 1362 (M.D. La. 1982) .............................................................12

*AXIS Insurance Co. v. PNC Financial Services Group, Inc.,*
        135 F. Supp. 3d 321 (W.D. Pa. 2015) ..........................................................22

*Bell Atlantic Corp. v. MFS Communications Co.,*
        901 F. Supp. 835 (D. Del. 1995) ...................................................................7

*Bennett v. Spear,*
        520 U.S. 154 (1997).....................................................................................11

*Bowen v. Massachusetts,*
        487 U.S. 879 (1988)......................................................................................14

*Browne v. Zaslow,*
        103 F. Supp. 3d 666 (E.D. Pa. 2015).............................................................7

*CableAmerica Corp. v. FTC,*
        795 F. Supp. 1082 (N.D. Ala. 1992) ............................................................12

*Calderon v. Ashmus,*
        523 U.S. 740 (1998)......................................................................................18

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,*
        511 F.3d 535 (6th Cir. 2007) .......................................................................25

*Chehazeh v. Attorney General,*
        666 F.3d 118 (3d Cir. 2012) .........................................................................12

*Ciba-Geigy Corp. v. EPA,*
        801 F.2d 430 (D.C. Cir. 1986).................................................................11, 13

*Clean Harbors, Inc. v. ACSTAR Insurance Co.,*
        No. 09-5175 (RBK/AMD), 2010 WL 1930579 (D.N.J. May 12, 2010).......21

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Continental Bank & Trust Co. v. Martin*,
    303 F.2d 214 (D.C. Cir. 1962)........................................................................9

*Dairymen, Inc. v. FTC*,
    684 F.2d 376 (6th Cir. 1982) .....................................................................12

*Davis v. United States*,
    499 F.3d 590 (6th Cir. 2007) ......................................................................9

*E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sols., LLC*,
    No. 15-280-SLR, 2015 WL 4071507 (D. Del. July 2, 2015).......................25

*Eagle-Picher Industries, Inc. v. EPA*,
    759 F.2d 905 (D.C. Cir. 1985)..............................................................15, 17

*Fischer & Porter Co. v. Moorco International Inc.*,
    869 F. Supp. 323 (E.D. Pa. 1994)........................................................23, 24

*FTC v. Nash-Finch Co.*,
    288 F.2d 407 (D.C. Cir. 1961)...............................................................8, 9

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980)..............................................................................8, 13

*Furie Operating Alaska, LLC v. U.S. Department of Homeland Security*,
    No. 3:12-CV-00158 JWS, 2013 WL 16286396 (D. Alaska Apr. 15,
    2013 ..........................................................................................................14

*General Finance Corp. v. FTC*,
    700 F.2d 366 (7th Cir. 1983) ...............................................................10, 12

*GNB Battery Technologies, Inc. v. Gould, Inc.*,
    65 F.3d 615 (7th Cir. 1995) ........................................................................7

*Harris County v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) ......................................................................9

*Harris v. U.S. Fidelity & Guaranty Co.*,
    569 F.2d 850 (5th Cir. 1978) .....................................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Harvard Battery, Inc. v. Symbol Technologies, Inc.*,
No. 06-cv-2702, 2006 WL 2850562 (E.D. Pa. Oct. 2, 2006).......................24

*Hindes v. FDIC*,
137 F.3d 148 (3d Cir. 1998) ..........................................................................12

*Honeywell International Inc. v. International Union*,
502 F. App'x 201 (3d Cir. 2012) ...................................................................25

*Household Bank v. JFS Group*,
320 F.3d 1249 (11th Cir. 2003) .......................................................................6

*HPF, LLC v. Nu Skin Enterprises, Inc.*,
No. Civ.A. 99-CV-1505, 1999 WL 782573 (E.D. Pa. Sept. 28, 1999)...........5

*Hunt Manufacturing Co. v. Fiskars Oy AB*,
No. Civ.A. 97-2460, 1997 WL 667117 (E.D. Pa. Oct. 2, 1997) ....................5

*IMS Health, Inc. v. Vality Technology Inc.*,
59 F. Supp. 2d 454 (E.D. Pa. 1999)...............................................................24

*Jama v. Department of Homeland Security*,
760 F.3d 490 (6th Cir. 2014) .........................................................................10

*Jerome Milton, Inc. v. FTC*,
734 F. Supp. 1416 (N.D. Ill. 1990)................................................................12

*LabMD, Inc. v. FTC*,
776 F.3d 1275 (11th Cir. 2015) .....................................................................12

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
134 S. Ct. 843 (2014).............................................................................6, 7, 9

*Metropolitan Life Insurance Co. v. Price*,
501 F.3d 271 (3d Cir. 2007) ............................................................................6

*Morgan Drexen, Inc. v. Consumer Financial Protection Bureau*,
785 F.3d 684 (D.C. Cir. 2015).......................................................................22

*North Carolina State Board of Dental Examiners v. FTC*,
768 F. Supp. 2d 818 (E.D.N.C. 2011) ...........................................................12

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Oak Associates, Ltd. v. Palmer*,
No. civ.A.05-4210, 2006 WL 293385 (E.D. Pa. Feb. 7, 2006)....................21

*Payne Enterprises, Inc. v. United States*,
837 F.2d 4863 (D.C. Cir. 1988 ........................................................................17

*R.J. Reynolds Tobacco Co. v. FTC*,
14 F. Supp. 2d 757 (M.D.N.C. 1998) ............................................................12

*Reifer v. Westport Insurance Corp.*,
751 F.3d 129 (3d Cir. 2014) ..........................................................................19

*Sackett v. EPA*,
566 U.S. 120 (2012)..........................................................................11, 12, 17

*Scottsdale Insurance Co. v. RSE Inc.*,
303 F.R.D. 234 (E.D. Pa. 2014) ....................................................................23

*Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of American*,
257 F.2d 485 (3d Cir. 1958) ............................................................................5

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950)..........................................................................................9

*St. Paul Fire & Marine Insurance Co. v. R&Q Reinsurance Co.*,
No. CV 15-5528, 2016 WL 3087379 (E.D. Pa. June 2, 2016)....................24

*Superior Oil Co. v. Pioneer Corp.*,
706 F.2d 603 (5th Cir. 1983) ..........................................................................6

*Swish Marketing, Inc. v. FTC*,
669 F. Supp. 2d 72 (D.D.C. 2009).............................................12, 16, 19, 22

*Thomas v. Union Carbide Agricultural Products Co.*,
473 U.S. 568 (1985)........................................................................................16

*Town of Sanford v. United States*,
140 F.3d 20 (1st Cir. 1998)..............................................................................9

*Ukiah Valley Medical Center v. FTC*,
911 F.2d 261 (9th Cir. 1990) ........................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States Army Corps of Engineers v. Hawkes Co.*,
    136 S. Ct. 1807 (2016)..................................................................11, 12, 17

*United States v. Washington*,
    759 F.2d 1353 (9th Cir. 1985) .....................................................19

*Volvo GM Heavy Truck Corp. v. United States Department of Labor*,
    118 F.3d 205 (4th Cir. 1997) .......................................................10

*Wearly v. FTC*,
    616 F.2d 662 (3d Cir. 1980) ........................................................13

*Williams v. BASF Catalysts LLC*,
    765 F.3d 306 (3d Cir. 2014) ........................................................18

## STATUTES

15 U.S.C. § 45(b) ...............................................................................14

5 U.S.C. § 704 ...................................................................................10

## I.   __INTRODUCTION__

Watson Laboratories, Inc. ("Watson") and Allergan Finance, LLC ("Allergan," together "Plaintiffs") hereby submit this opposition to the Motion to Dismiss and supporting Memorandum of Law ("Mem.") filed by the Federal Trade Commission ("FTC" or "Commission").

In moving to dismiss on the grounds that Plaintiffs are "preempting" Commission enforcement (Mem. at 7, 10, 12, 18, 22), the FTC disregards the history of its own case.  This controversy began nearly a year ago when the FTC filed an action in this Court (the "Original Action") against Watson and Allergan's corporate parent Allergan plc ("APLC").  Watson and APLC moved to dismiss, explaining that the FTC lacks statutory authority to bring its claims in federal court or, at minimum, lacks authority to seek disgorgement or restitution.  The parties fully briefed that motion; the FTC voluntarily dismissed its claims before the Court could rule, but only after expressly representing that it intended to refile the very same claims in a different jurisdiction.  In response, Watson initiated this declaratory judgment action (the "Action") in order to preserve the efficiency of this Court deciding the issues regarding the FTC's statutory authority that had been raised in the (fully briefed) motion to dismiss.  ***Three months later***, the FTC finally refiled its claims in the Northern District of California (the "California Action").  Put simply, Plaintiffs did not "preempt" anything.

Each of the FTC's arguments for dismissing this Action fails.  Plaintiffs have a valid cause of action under the Declaratory Judgment Act ("DJA") or, in the alternative, the Administrative Procedure Act ("APA").  As various courts have held, when a putative coercive plaintiff threatens suit, the putative defendant may seek a declaratory judgment under the DJA that "borrows" the threatened cause of action.  Thus, Plaintiffs properly borrowed the FTC's (twice) asserted action under Section 13(b) of the FTC Act.  And contrary to the FTC's assertion that Plaintiffs only can sue under the APA, the only circuit court to consider the question held that a plaintiff may challenge FTC action under the DJA without resort to the APA.

Plaintiffs can also challenge, in the alternative under the APA, final agency action for which they otherwise lack an adequate remedy.  The FTC's decision to sue Plaintiffs is final agency action because it ended the agency's administrative process and poses serious legal consequences to Plaintiffs.  Forcing Plaintiffs to present their arguments in the California Action would not be an adequate substitute for this Action and would run counter to the Supreme Court's instruction that lower courts should interpret the APA to be hospitable to judicial review. Moreover, common sense instructs that Plaintiffs' cause of action is ripe.  The Action presents legal issues that are fit for this Court to decide, and such a decision could remedy both (1) the hardships Plaintiffs would otherwise face from having to defend a (meritless) enforcement action, and (2) the hardships to both Plaintiffs

and the judiciary resulting from duplicative litigation in the California Action.

This Action is also plainly justiciable—irrespective of whether it addresses the merits of the FTC's underlying claims against Plaintiffs—because it will resolve concrete disputes that have already arisen, not abstract disagreements. Finally, and contrary to the FTC's assertions, the "*Reifer* factors" that courts in this jurisdiction consider when deciding whether to entertain a declaratory judgment action weigh heavily in favor of hearing this case.

In short, the FTC's motion to dismiss has no merit and should be denied.

## II.   **BACKGROUND**

In early 2014, the FTC initiated investigations of two separate patent litigation settlements—one regarding Lidoderm, the other involving Opana ER—that shared no factual nexus except that Endo Pharmaceuticals Inc. was a party to each.  The Commission investigated for over two years before ultimately voting to sue in federal court and filing its Complaint before this Court on March 30, 2016.

Watson and APLC moved to sever the claims related to Lidoderm from those related to Opana ER.  Watson and APLC further moved to dismiss the FTC's suit on the grounds that the FTC lacks statutory authority under Section 13(b) of the FTC Act to challenge wholly past conduct in federal court or, at minimum, to obtain disgorgement or restitution, and the parties fully briefed those issues (including a sur-reply from the FTC).  Just three days after Watson and APLC

moved to dismiss, the FTC opposed the motion to sever, but asked that if the Court

*did* sever, it transfer the Lidoderm-related claims to the Northern District of

California.  (FTC Mem. in Opp. to Defs.' Mots. to Sever at 2, No. 16-cv-01440,

Dkt. No. 73.)  The FTC further stated that, if the Court were to sever without

transferring, then the FTC would "voluntarily dismiss and refile" its Lidoderm-

related claims in California, where—as the FTC was aware when it filed the

Original Action—private litigation has been pending since 2014.  (*Id.*)  After

briefing on the motion to dismiss was completed, this Court severed the claims, but

declined the FTC's invitation to transfer.  (Order, No. 16-cv-01440, Dkt. No. 120.)

The FTC then voluntarily dismissed the Original Action.

On October 26, 2016, the day after the FTC sought to withdraw the Original

Action, Watson filed this Action seeking a declaratory judgment regarding the very

issues already extensively briefed on Watson and APLC's motion to dismiss.[1]

(*See* Compl. for Decl. J., Dkt. No. 1.)  Allergan later filed a similar action; the

Court ordered the cases consolidated, and the parties filed a Consolidated

Amended Complaint ("Compl.") substantively identical to Watson's.  (*See* Dkt.

Nos. 36, 44.)

Three months after Watson initiated this Action, the FTC followed through

---

[1]  In the severance order, the Court denied the then-pending motion to dismiss as
moot, with leave to refile once the FTC filed separate complaints regarding its
Lidoderm and Opana ER claims.  (Order, No. 16-cv-01440, Dkt. No. 120.)

on its threat—first made in July 2016—and refiled its Lidoderm-related claims

against Watson, Allergan and APLC in the Northern District of California.  (*See*

Compl., *FTC v. Allergan plc, et al.*, No. 17-cv-00312-WHO (N.D. Cal. Jan. 23,

2017), Dkt. No. 1.)  As it explained to this Court, however, the FTC's decision to

refile its claims was not "foreordained."  (FTC Letter at 2, Dkt. No. 35.)[2]

## III.  PLAINTIFFS HAVE A CAUSE OF ACTION UNDER EITHER THE DJA OR, IN THE ALTERNATIVE, THE APA

### A.  Because There Is a Concrete Case and Controversy Under The FTC Act, the DJA Allows Plaintiffs To Bring This Action

"The purpose of the Declaratory Judgment Act is 'to enable a person caught

in controversy to obtain resolution of the dispute, instead of being forced to await

the initiative of the antagonist.'"  *Hunt Mfg. Co. v. Fiskars Oy AB*, No. Civ.A.

97-2460, 1997 WL 667117, at *3 (E.D. Pa. Oct. 2, 1997) (citation omitted); *see

also HPF, LLC v. Nu Skin Enters., Inc.*, No. Civ.A. 99-CV-1505, 1999 WL

782573, at *3 (E.D. Pa. Sept. 28, 1999) ("'Courts should give effect to the [DJA's]

policy of providing persons threatened with litigation a means to determine their

rights.'" (citation omitted)).  It is well-established that even ***implied*** litigation

creates a case or controversy under the DJA.  *See, e.g.*, *Simmonds Aerocessories,

Ltd. v. Elastic Stop Nut Corp. of Am.*, 257 F.2d 485, 490 (3d Cir. 1958) ("[I]t is not

---

[2]  In fact, the FTC refiled its claims against Impax Laboratories, Inc., a defendant
in the Original Action, in an administrative proceeding, rather than federal court.

essential that there be a direct threat of litigation in order to invoke the Declaratory Judgment Act.  It is sufficient if such a threat is implicit . . . .").

Moreover, the DJA allows "a party to bootstrap its way into federal court by alleging the imminence of another party's federal action against it."  *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 607 (5th Cir. 1983); *see also Household Bank v. JFS Grp.*, 320 F.3d 1249, 1253 (11th Cir. 2003) ("If there is an underlying ground for federal court jurisdiction, the [DJA] 'allow[s] parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action.'" (second alteration in original) (citation omitted)).  As the Third Circuit has recognized, "'[f]ederal courts have regularly taken original jurisdiction over . . . suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277 n.4 (3d Cir. 2007) (alterations in original) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 19 (1983)).

Accordingly, the DJA permits a declaratory judgment plaintiff to borrow the defendant's potential cause of action, without having to wait to be sued.  For example, in *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014), a party facing a potential claim of patent infringement sought a declaration of noninfringement.  *See id.* at 847.  The Supreme Court held that because the

6

declaratory judgment defendant "could terminate the license and bring an ordinary federal patent law action for infringement," the declaratory judgment action, "which avoids that threatened action, also 'arises under' federal patent law." *Id.* at 848 (citation omitted).  In short, because the coercive action would arise under federal law, so did the declaratory judgment action.  Other courts have similarly held that "'[f]ederal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts . . . which demonstrate that the defendant could file a coercive action arising under federal law.'"  *Browne v. Zaslow*, 103 F. Supp. 3d 666, 674 (E.D. Pa. 2015) (citation omitted).[3]

Here, Plaintiffs properly brought this Action under the DJA in the face of the FTC's threatened (and actual) litigation under Section 13(b) of the FTC Act.  The FTC created an actual controversy between the parties when it invoked Section 13(b) to file suit in this very district.  (Compl. ¶¶ 9, 50.)  Nor did the FTC extinguish that controversy when it voluntarily dismissed its Original Action, because the agency expressly threatened to refile its claims.  (*Id.* ¶¶ 9, 53.)  Thus, the DJA allowed Plaintiffs to "borrow" the FTC's cause of action under Section

---

[3]  *See also GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) ("[J]urisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant."); *Bell Atl. Corp. v. MFS Commc'ns Co.*, 901 F. Supp. 835, 840 (D. Del. 1995) (explaining that a declaratory judgment action "will arise under federal law . . . if the declaratory action's correlative coercive suit, i.e. the coercive suit that the declaratory defendant could have filed, would present a federal claim").

13(b) without waiting for the FTC to make good on its threat.

The FTC's attacks on Plaintiffs' ability to invoke the DJA lack merit.  ***First***, the FTC asserts that "plaintiffs cannot invoke the Declaratory Judgment Act to gain entry to the courthouse . . . [w]ithout an APA claim."  (Mem. at 11.)  But the FTC fails to cite any support for this proposition, nor any authority to suggest that the ordinary DJA principles allowing a plaintiff to "borrow" a threatened cause of action do not apply here.[4]  And indeed, the FTC's position is directly contradicted by the case law.  In *FTC v. Nash-Finch Co.*, 288 F.2d 407 (D.C. Cir. 1961), for example, the D.C. Circuit expressly held that a suit against the FTC could proceed under the DJA alone, ***without resort*** to the APA.  *See id.* at 408-09.  In that case, the FTC purported to retroactively apply new provisions of the Clayton Act to existing consent decrees, and Nash-Finch sought a declaratory judgment that the Clayton Act's (new) provisions did not apply to its (old) consent decree.  *See id.* The D.C. Circuit held that it had "jurisdiction to decide the issue under the Declaratory Judgment Act" because the "action of the Commission gave rise to an

---

[4]  While the FTC contends that "in *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980), the Supreme Court held that the only avenue for review [of an FTC enforcement proceeding] was under the APA" (Mem. at 7), the agency mischaracterizes that decision.  *Standard Oil* merely held that under the APA, agency action "is not judicially reviewable before administrative adjudication concludes."  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 246 (1980).  The FTC fails to cite any decision challenging agency action that—like the FTC's suits here—occurred following the completion of the agency's administrative proceedings, or that otherwise limited a plaintiff's ability to proceed under the DJA.

actual controversy" that was "real and sufficiently immediate to bring the question . . . within the power of the judiciary to decide as an actual controversy." *Id.* at 409. As such, the court further held that "we need not consider the Administrative Procedure Act." *Id.* The same result should follow here.

**Second**, the FTC purports to demonstrate that the DJA "creates no freestanding cause of action against government agencies" (Mem. at 11), but relies on cases that stand only for the unremarkable proposition that if a federal court would not have jurisdiction over the disputed issue between the parties, then the DJA does not provide a standalone basis for federal jurisdiction. *See, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672-74 (1950) (where underlying dispute between parties was a breach of contract claim not based on federal law, federal jurisdiction extended only to defendant for which there was diversity).[5] As the Supreme Court has explained, the relevant jurisdictional inquiry for purposes of the DJA is the "'character of the threatened action.'" *Medtronic*, 134 S. Ct. at

---

[5] *See also Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) (no federal law at issue, and the relevant state law did not allow either party to sue); *Davis v. United States*, 499 F.3d 590, 594, 596 (6th Cir. 2007) (plaintiff had no cause of action, and potential coercive action was "too speculative to support standing"); *Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) (dismissing suit by town demanding satisfaction of unpaid taxes on property forfeited to federal government because town had "lost standing to bring [its] suit"); *Cont'l Bank & Tr. Co. v. Martin*, 303 F.2d 214, 215 n.7 (D.C. Cir. 1962) (distinguishing the case before the court from one in which there was "jurisdiction in the District Court though not under the Administrative Procedure Act").

848 (citation omitted).  Here, there is no doubt this Court would have jurisdiction over the FTC's once-threatened—now actual—coercive action, and the FTC admitted as much by alleging in the Original Action that this Court had jurisdiction over its Section 13(b) claims.  (Compl. ¶ 5, No. 16-cv-01440, Dkt. No. 1.)

*Third*, the FTC invokes the "exhaustion" doctrine (Mem. at 12-13), which mandates that a party pursue "'all intra-agency appeals'" before seeking relief in federal court.  *See Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*, 118 F.3d 205, 209 (4th Cir. 1997) (citation omitted); *see also Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014) (declaratory suit was improper where "[f]urther administrative relief [was] available"); *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368, 372 (7th Cir. 1983) (FTC had not yet sued to enforce administrative subpoena).  But here, once the FTC voted to sue and filed the Original Action, Plaintiffs had no remaining administrative redress.  (*Cf. infra*, Section III.B.1 (explaining that the FTC's decision to sue constitutes "final agency action" under the APA).)  Accordingly, the "exhaustion" doctrine simply does not apply.

## B.    <u>In the Alternative, Plaintiffs May Proceed Under the APA</u>

The APA permits suit to challenge "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Here, the FTC's decision to sue (twice) is final agency action for which Plaintiffs lack another adequate remedy.  Moreover, the parties' dispute is ripe and has been ever since the FTC

first decided to file the Original Action.

        1.    <u>The FTC's Decision To Sue Plaintiffs Is Final Agency Action</u>

An agency action is "final" and, therefore, reviewable under the APA if it "mark[s] the 'consummation' of the agency's decisionmaking process . . . from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).  Although the FTC asserts that agency action is final "only [if] it satisfies [these] two separate conditions" (Mem. at 9), the Supreme Court has "long taken" a "'pragmatic' approach" to finality.  *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1815 (2016) (citation omitted).

Under this pragmatic approach, the FTC's decision to file the Original Action (and subsequent California Action) plainly is final agency action.  ***First***, the FTC's decision to sue represents the "consummation" of its administrative process; there is no step left for the FTC to take as an administrative body after it files suit.  *See Sackett v. EPA*, 566 U.S. 120, 127 (2012) (compliance order "mark[ed] the "'consummation'" of the agency's decisionmaking process," as there was no additional opportunity for agency review (citation omitted)); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 437 (D.C. Cir. 1986) (action was "final" when there would be no "further agency consideration or possible modification").  Indeed, the FTC does

not dispute that its administrative process is complete.  (*See* Mem. at 9.)[6]

**Second**, the FTC's lawsuit gives rise to legal consequences that render judicial review particularly appropriate.  Typically, a party brings suit under the APA when it is confronted with the dilemma of complying with a regulation or facing an enforcement action.  Here, Plaintiffs currently face—as they did before— an enforcement suit seeking disgorgement and restitution.  The Supreme Court has "long held [that] parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil penalties.'"  *Hawkes*, 136 S. Ct. at 1815 (citation omitted); *see also Sackett*, 566 U.S. at 126 (holding that exposure to "penalties in a future

---

[6]  Nonetheless, the FTC cites cases (Mem. at 7-8) that are readily distinguishable because, unlike here, there had been no consummation of the intra-agency decision-making process. *See LabMD, Inc. v. FTC*, 776 F.3d 1275, 1277-78 (11th Cir. 2015) (administrative proceedings were ongoing); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 263 (9th Cir. 1990) (same); *Dairymen, Inc. v. FTC*, 684 F.2d 376, 377-78 (6th Cir. 1982) (same); *N.C. State Bd. of Dental Exam'rs v. FTC*, 768 F. Supp. 2d 818, 820 (E.D.N.C. 2011) (same); *Audubon Life Ins. Co. v. FTC*, 543 F. Supp. 1362, 1364 (M.D. La. 1982) (same); *Gen. Fin.*, 700 F.2d at 368 (pre-suit investigation ongoing); *R.J. Reynolds Tobacco Co. v. FTC*, 14 F. Supp. 2d 757, 759 (M.D.N.C. 1998) (challenging pre-complaint investigation); *CableAmerica Corp. v. FTC*, 795 F. Supp. 1082, 1084 (N.D. Ala. 1992) (same); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 75-76 (D.D.C. 2009) (parties were in settlement negotiations and FTC had not filed federal court complaint); *Jerome Milton, Inc. v. FTC*, 734 F. Supp. 1416, 1419 (N.D. Ill. 1990) (declaratory action filed when "no . . . action by the Commission [was] indicated"); *Hindes v. FDIC*, 137 F.3d 148, 162 (3d Cir. 1998) (FDIC had conducted only "'the first step in a multi-step statutory procedure'" (citation omitted)).  Meanwhile, in *Chehazeh v. Attorney General*, 666 F.3d 118 (3d Cir. 2012), the Third Circuit held agency action reviewable under the collateral-order doctrine, which is not at issue.  *Id.* at 141.

enforcement proceeding" has "'legal consequences'" (citation omitted)).

Nor does the FTC cite any authority "confirming that filing an enforcement lawsuit in federal court is not final agency action." (Mem. at 10.) Rather, the decisions on which the FTC relies stand merely for the proposition that parties may not use the DJA to disrupt **ongoing** administrative proceedings. For example, the FTC cites *Standard Oil*, where the Supreme Court recognized that the burden of defending an administrative action "certainly is substantial" but could not overcome the threat of "interference with the proper functioning of the agency." *Standard Oil*, 449 U.S. at 242. The FTC similarly cites *Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1980), where the Third Circuit addressed a "[r]esort to a court by recipients of investigative subpoenas **before an action for enforcement has commenced**" and the declaratory judgment plaintiff "was under no compulsion to either turn over the documents to the FTC or suffer civil or criminal penalties as a result." *Id.* at 665, 667 (emphasis added). These cases are inapposite because here, the FTC chose to forgo continued administrative processes and instead became an ordinary litigant. As a result, there is no remaining administrative process that could be disrupted. Thus, the FTC's decision to bring its Lidoderm-related claims is "final agency action" that is reviewable under the APA.[7]

---

[7] The FTC's decision to sue in federal court and seek monetary relief is also "'final agency action fit for judicial review'" as the FTC's "'interpretation of its governing statute.'" *Ciba-Geigy Corp.*, 801 F.2d at 438 (citation omitted).

2.    Plaintiffs Have No Other Adequate Remedy in Court

The FTC also claims that this Action is unnecessary because Plaintiffs "can raise exactly the same arguments they are making now as defenses" in the California Action.  (Mem. at 10.)  But the FTC misapprehends what it means to have "no other adequate remedy in a court" under the APA.  The Supreme Court has explained that this provision "make[s] . . . clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  Here, Plaintiffs are not duplicating existing procedure for review of the FTC's decision to bring a federal court lawsuit—the FTC Act contains none.  *Cf.* 15 U.S.C. § 45(b) (providing a specific avenue for reviewing the results of administrative proceedings).  As such, there is no risk of duplicating existing review procedures.

The FTC's suggestion that the California Action is an adequate remedy also defies the Supreme Court's directive that courts should interpret the APA "'hospitabl[y]'" and that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (citations omitted).  "'Waiting for the Government to pursue an enforcement action in order to assert [a] claim as a defense is not the sort of special and adequate review procedure that is envisioned by the APA's provision prohibiting duplicative proceedings.'" *Furie*

14

*Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, No. 3:12-CV-00158 JWS,

2013 WL 1628639, at *6 (D. Alaska Apr. 15, 2013) (citation omitted).  Further, the

FTC's proposal would require the parties to duplicate their efforts in the California

Action, where a second court would need to familiarize itself with the issues in this

Action.[8]  The FTC's claim that Plaintiffs should "simply mov[e] to dismiss"

(Mem. at 1) in the California Action is especially ironic, as Plaintiffs did exactly

that in the Original Action—only to have the FTC withdraw its claims.  Ultimately,

the FTC cannot demonstrate at all—let alone clearly and convincingly—that

Plaintiffs should be denied access to judicial review here.

      3.    <u>Plaintiffs' Action Is Ripe</u>

     The "basic rationale" of the ripeness doctrine is to "prevent the courts,

through avoidance of premature adjudication, from entangling themselves in

abstract disagreements over administrative policies, and also to protect the

agencies from judicial interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties."  *Abbott*

*Labs.*, 387 U.S. at 148-49.  To achieve these ends, "the ripeness doctrine requires a

pragmatic and commonsense application."  *Eagle-Picher Indus., Inc. v. EPA*, 759

F.2d 905, 918 (D.C. Cir. 1985).

---

[8]  Notably, Judge Orrick has stated that he is inclined to stay the California Action
pending the resolution of this case.  (*See infra* p. 25.)

The Action does not involve "abstract disagreements."  The FTC has twice brought lawsuits implicating the very questions presented in this Action, and the FTC itself has acknowledged that a dispute is ripe "when . . . the agency file[s] a complaint."  *See Swish Mktg.*, 669 F. Supp. 2d at 76 n.3 (where the FTC withdrew a ripeness challenge to a declaratory judgment action after filing a complaint).  In fact, the issues in this Action were sufficiently concrete to be the subject of a fully briefed motion to dismiss the Original Action.

The Action is also ripe under the specific *Abbott Labs* factors cited by the FTC—i.e., (1) "fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration."  *Abbott Labs.*, 387 U.S. 149.  As concerns the first factor, legal questions such as "whether [a] statute was properly construed" are ripe for review.  *See id.*  Likewise, issues are fit for judicial review when they "will not be clarified by further factual development."  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985).

Here, Plaintiffs have raised purely legal questions, namely whether Section 13(b) of the FTC Act authorizes the FTC (1) to bring federal court litigation—as opposed to administrative proceedings—to challenge wholly past conduct; and (2) to seek disgorgement or restitution.  (Compl. ¶¶ 63-85.)  No additional factual development is necessary to decide this Action, which confirms the purely legal nature of the issues.  Indeed, the FTC tacitly admitted in both the Original and

California Actions that it is challenging wholly past conduct (*id.* ¶¶ 14-16), and thus no further factual development is needed regarding whether Plaintiffs "are violating or are about to violate" Section 5 of the FTC Act (which they are not).[9]

As for the second factor, the "undue hardship" analysis turns on whether the effects of agency action are "felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148-49.  In the typical case of "pre-enforcement review," this sort of hardship is the dilemma of complying with a regulation or facing an enforcement action.  *See id.* at 152-53.  Courts have recognized, however, that a "mechanical application of the second prong of the *Abbott Laboratories* test could work mischief."  *See Eagle-Picher Indus., Inc.*, 759 F.2d at 918.  "[T]he hardship prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 493 (D.C. Cir. 1988).

For the reasons discussed in Section III.B.2, *supra*, Plaintiffs plainly satisfy this test.  Indeed, if the dilemma of "comply or be sued" creates undue hardship, then facing an actual enforcement action—twice—surely must also suffice.  *See Hawkes*, 136 S. Ct. at 1815; *Sackett*, 566 U.S. at 126.  In this regard, this Action is

---

[9]  The Commission purports to rely on a "likelihood of recurrence" to demonstrate that its suit is proper under the FTC Act (Mem. at 14), but, in any event, has previously stated that it already can "provide . . . under seal" materials that could establish its statutory authority to sue in federal court.  (FTC Sur-reply in Opp. to Defs.' Mot. to Dismiss, No. 16-cv-01440, Dkt. No. 114 at 3 & n.2.)

unlike both *Wearly* and *Standard Oil*, where declaratory judgment plaintiffs had not been threatened with federal court enforcement.  (*See supra* p. 13.)  And there would be significant hardship—both to the parties and the judicial system—if this Court were to withhold consideration as the FTC suggests.  By requiring Plaintiffs raise their arguments on a motion to dismiss the California Action (Mem. at 16), the FTC's proposal would force a second Court to be briefed on, familiarize itself with and decide issues that were fully briefed here once and soon will be again.  This proposal is contrary both to common sense and judicial efficiency and, if followed, would create additional hardship for all involved.

## IV.   **PLAINTIFFS' ACTION IS JUSTICIABLE**

The FTC asserts that the Action is "nonjusticiable because [it] will not resolve the entire controversy between the parties."  (*Id.*)  In each case on which the FTC relies, however, the declaratory judgment plaintiff sought to adjudicate issues that ***might*** arise in a future case.  *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (respondent sought "a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding"); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 314, 328 (3d Cir. 2014) (plaintiffs requested declaratory relief "intended to constrain [defendants] from asserting res judicata, statute of limitations, or other defenses that may be asserted in future or re-activated asbestos-injury suits").  The Action does not address such abstract

disputes, but rather issues that ***already arose*** in the Original Action—and that are similarly implicated in the ongoing California Action.

The FTC also disregards the "well settled [principle] that a district court may render a declaratory judgment though that judgment will not settle all the issues of the entire controversy.  The controversy settled by the declaratory judgment need only be an autonomous dispute."  *Harris v. U.S. Fid. & Guar. Co.*, 569 F.2d 850, 852 (5th Cir. 1978); *see also United States v. Washington*, 759 F.2d 1353, 1364-65 (9th Cir. 1985) ("A declaratory judgment need not resolve all the issues in controversy, as long as it resolves a significant disputed issue.").[10]

## V. DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF EXERCISING JURISDICTION TO HEAR THIS ACTION

Finally, where there is a justiciable case or controversy, courts look to a number of non-exclusive factors to decide whether to exercise discretion to hear a declaratory judgment action, including:  (1) whether a declaration will resolve the uncertainty that gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; and (7)

---

[10] Even in *Swish Marketing*, on which the FTC relies extensively, the court acknowledged that "'[a] declaratory action need not be dismissed because it could not settle all possible differences between the parties.'"  *Swish Mktg.*, 669 F. Supp. 2d at 78 (alteration in original) (citation omitted).

prevention of the use of the declaratory action as a method of procedural fencing. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014).  These "*Reifer* factors" weigh heavily in favor of maintaining the Action.

### A.   The FTC Is Guilty of Procedural Fencing, Not Plaintiffs

The FTC's forum shopping is well documented.  This Court previously recognized that the FTC's efforts to "pick up its marbles and play in venues more to its liking" came "with ill grace."  (Mem. at 1, No. 14-cv-01440, Dkt. No. 119.) The FTC attempts to minimize this "ill grace" by citing cases that purportedly immunize Rule 41(a) voluntary dismissals from accusations of forum shopping. (Mem. at 23-24.)  But none of these decisions compels this Court to ignore the FTC's litigation conduct in deciding whether this Action should proceed.

Meanwhile, there is no basis for the FTC's bare assertions that Plaintiffs are engaged in procedural fencing.  (*Id.* at 22.)  Rather, Plaintiffs seek only to finish what the FTC started, ***in the forum where the FTC started it***.  Consequently, the Action presents none of the typical indicia of forum shopping.  The Action has not "disturbed" or "deprive[d]" the FTC of its "traditional choice of forum and timing" (*id.* at 23), as the FTC chose this forum when it filed the Original Action.  Nor did Plaintiffs seek to "acquire a favorable forum" (*id.*), but rather filed the Action in the forum of the FTC's own, initial choosing.

The irony of the FTC's assertion that Plaintiffs "raced to the courthouse"

cannot be overstated.  (*See id.* at 21-22.)  The FTC sued Plaintiffs first, in this very

Court.  And there was no "race to the courthouse" when this Action was filed;

whereas Watson filed this action on October 26, 2016, the FTC waited until ***three***

***months later*** to bring the California Action.  In fact, the FTC's newly-minted "race

to the courthouse" argument is belied by its prior representation to this Court that

its decision to refile in California was not foreordained:

> The FTC told the Court in July [2016] that if the FTC's claims in the
> original action were severed, it intended to voluntarily dismiss and refile in
> other districts where related private litigation is pending.  FTC v. Endo
> Pharmaceuticals, Inc., No. 16-cv-1440, ECF No. 73, at 2.  Although that
> statement accurately represented the intent of FTC staff at the time, the
> agency subsequently entered into settlement negotiations with some of the
> parties which materially affected its decision-making process.  As we
> explained in our December 30, 2016, motion to dismiss, "any new
> proceeding must be approved by a majority vote of the Commission."  ECF
> No. 25-1, at 6.  As of that date, settlement negotiations were ongoing, and
> FTC staff had made no recommendation to the Commission.  Nor had the
> Commission voted on the matter.  ***Thus, it was not clear at that time how***
> ***the Commission would proceed.***

(FTC Letter at 1, Dkt. No. 35 (emphasis added).)  "[A]voiding the proverbial race

to the courthouse does not require that a party passively wait to be sued."  *Oak*

*Assocs., Ltd. v. Palmer*, No. civ.A.05-4210, 2006 WL 293385, at *4 (E.D. Pa. Feb.

7, 2006) (enjoining second-filed coercive action and finding "no race to the

courthouse" when declaratory judgment action was filed one month before

coercive action); *see also Clean Harbors, Inc. v. ACSTAR Ins. Co.*, No. 09-5175

(RBK/AMD), 2010 WL 1930579, at *6 (D.N.J. May 12, 2010) (dismissing second-

filed coercive action and noting "it can hardly be called a race" when coercive plaintiff "waited over a month . . . to file its own action").

**B.      The Remaining *Reifer* Factors Support Maintaining the Action**

1.      This Action Can Prevent Piecemeal Litigation

Contrary to the FTC's argument (Mem. at 19), the mere fact that the Action does not concern the merits of the FTC's underlying antitrust claims against Plaintiffs does not favor dismissal.  (*Cf. supra*, Section IV (explaining why this fact does not render the Action non-justiciable).)  In fact, the cases on which the FTC relies hold that this *Reifer* factor aims to prevent "piecemeal litigation." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 697 (D.C. Cir. 2015); *see also Swish Mktg.*, 669 F. Supp. 2d at 78.  But of course, Watson filed this Action specifically ***to avoid*** "piecemeal litigation" by the FTC in multiple jurisdictions.  And the ***FTC itself*** initiated the piecemeal litigation by filing the California Action three months after this Action was filed.  In all events, a judgment in Plaintiffs' favor in this Action would resolve the FTC's claims in the California Action and, therefore, eliminate "piecemeal litigation."  This factor thus favors Plaintiffs.

2.      There Is No Pending State Court Proceeding

The FTC calls this fifth *Reifer* factor "neutral" (Mem. at 24 & n.5), but the absence of a pending state court action strongly favors Plaintiffs.  Indeed, "many of the district courts tasked with applying *Reifer* have proceeded to hear declaratory

judgment actions when there is not a parallel pending state action." *AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*, 135 F. Supp. 3d 321, 331 (W.D. Pa. 2015).

### 3.    This Action Is Efficient, Convenient and in the Public Interest

This Action can resolve the uncertainty surrounding the FTC's ability to sue Plaintiffs in federal court and seek disgorgement or restitution.  The Court is familiar with these issues, having been fully briefed on them once before, and full briefing on the merits of Plaintiffs' declaratory judgment motion is scheduled to be completed in a few months—by June 7.  Accordingly, convenience favors maintaining the Action.  *See Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 240 (E.D. Pa. 2014) ("[T]he parties are already before us, and thus convenience weighs in favor of exercising our jurisdiction.").

Relatedly, the "public interest requires the speediest and most efficient resolution" of the uncertainty regarding the scope of the FTC's statutory authority. *See Fischer & Porter Co.*, 869 F. Supp. at 327 (exercising discretion to hear declaratory judgment action).  The FTC hollowly asserts that proceeding in California would be more convenient because the parties could "take advantage of discovery that has already taken place and to coordinate future discovery so as to avoid duplication."  (Mem. at 20.)[11]  But the FTC already obtained discovery from

---

[11] While the FTC claims that it refiled in California "because . . . a parallel action filed by the state of California [is] also pending there" (Mem. at 1), that

the private MDL during the Original Action, and the agency cannot explain how future coordination with the MDL would even be possible given the advanced nature of that case, in which fact discovery is closed and expert reports have been served.  Further, the FTC's inability to coordinate with the MDL is a product of its own litigation tactics.  The FTC filed the Original Action in March 2016 **fully aware** that the MDL had been pending before Judge Orrick since 2014.  The FTC only changed its preference for this forum after receiving a ruling it perceived as unfavorable when this Court severed the Original Action.

> 4.    This Action Was Filed Before the FTC's California Action, and <u>Judge Orrick Has Stated He Is Inclined To Defer to This Court</u>

Finally, with regard to the fourth and sixth *Reifer* factors, there is no merit to the FTC's contention that courts "ordinarily give priority to the coercive action." (Mem. at 21.)  In fact, courts in this jurisdiction "***routinely***" favor first-filed actions even "when the first-filed suit is an action for declaratory judgment." *Fischer & Porter Co. v. Moorco Int'l Inc.*, 869 F. Supp. 323, 325 (E.D. Pa. 1994) (emphasis added).[12]  "As a general rule, the first-filed case is favored, 'unless considerations

---

representation is plainly false because the state of California filed its action on February 3, 2017, after **both** this Action **and** the California Action.

[12] *See also St. Paul Fire & Marine Ins. Co. v. R&Q Reinsurance Co.*, No. CV 15-5528, 2016 WL 3087379, at *4 (E.D. Pa. June 2, 2016) (dismissing second-filed coercive action in favor of first-filed declaratory judgment action); *IMS Health, Inc. v. Vality Tech. Inc.*, 59 F. Supp. 2d 454, 464 (E.D. Pa. 1999) (declining to dismiss first-filed declaratory judgment action).

of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Harvard Battery, Inc. v. Symbol Techs., Inc.*, No. 06-cv-2702, 2006 WL 2850562, at *1 (E.D. Pa. Oct. 2, 2006) (citation omitted) (denying motion to dismiss first-filed declaratory judgment action).[13]  Here, as discussed above (*see supra* pp. 23-24), considerations of efficiency and convenience weigh in favor of hearing this Action.

In addition, Judge Orrick, who is presiding over the California Action, has stated he is inclined to stay the FTC's case pending the resolution of this Action:

> [I] have a colleague in Pennsylvania who thinks that perhaps the FTC is forum shopping by coming out here and has made fairly clear that he thinks . . . that he ought to be dealing with the threshold issues . . . . So that gives me quite a bit of pause in wanting to proceed . . . on those issues.

(Feb. 21, 2017 Hr'g Tr. at 14:7-14, No. 14-md-02521-WHO (N.D. Cal.).)[14]

## VI.   **CONCLUSION**

---

[13] "'Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule.'" *E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sols., LLC*, No. 15-280-SLR, 2015 WL 4071507, at *2 (D. Del. July 2, 2015) (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976-79 (3d Cir. 1988)).  Such exceptions include the cases the FTC erroneously cites as indicating that courts ordinarily favor later-filed coercive actions.  *See Honeywell Int'l Inc. v. Int'l Union*, 502 F. App'x 201, 205-06 (3d Cir. 2012) (recognizing first-to-file rule "applies to suits under the [DJA]," but concluding that declaratory judgment plaintiff was "attempting to beat [coercive plaintiff] to the courthouse"); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (finding that the court faced the "very kind of anticipatory suit which should not have been given deference under the first-to-file rule").

[14] At the FTC's request, the parties submitted additional briefing regarding a stay of the California Action and expect Judge Orrick will issue a final decision shortly.

For these reasons, Plaintiffs respectfully request that the Court deny the FTC's motion to dismiss.

Dated:  March 16, 2017

Respectfully Submitted,

Steven C. Sunshine (*pro hac vice*)
Timothy H. Grayson (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
1440 New York Avenue, NW
Washington, D.C. 20005
Tel: (202) 371-7000
Fax: (202) 393-5760
steve.sunshine@skadden.com
timothy.grayson@skadden.com

/s/ Karen Hoffman Lent
Karen Hoffman Lent (*pro hac vice*)
Michael H. Menitove (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
4 Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000
karen.lent@skadden.com
michael.menitove@skadden.com

/s/ Terry M. Henry
Terry M. Henry
**BLANK ROME LLP**
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644
Thenry@blankrome.com

Edward D. Rogers (69337)
Matthew I. Vahey (315920)
**BALLARD SPAHR LLP**
1735 Market Street , 51st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 864-8500
Fax: (215) 864-8999
vaheym@ballardspahr.com

/s/ Peter J. Carney
Peter J. Carney (*pro hac vice*)
David R. Courchaine (*pro hac vice*)
Youngeun Kim (321310)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355
pcarney@whitecase.com
dcourchaine@whitecase.com
january.kim@whitecase.com

Jack E. Pace III (*pro hac vice*)
Bryan D. Gant (*pro hac vice*)
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
Tel: (212) 819-8200
Fax: (212) 354-8113
jpace@whitecase.com
bgant@whitecase.com

*Counsel for Allergan Finance, LLC*

*Counsel for Watson Laboratories, Inc.*

## <u>ATTESTATION STATEMENT</u>

I, Terry M. Henry, the ECF User whose identification and password are being used to file Plaintiffs' Opposition to Motion to Dismiss, attest under penalty of perjury that concurrence in this filing has been obtained from all submitting counsel.

Dated:  March 16, 2017                                    /s/ Terry M. Henry
                                                                        Terry M. Henry

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of March, 2017, Plaintiffs' Opposition to Defendant's Motion to Dismiss was filed electronically and served on counsel of record via the Court's CM/ECF Filing System**.**


                                                            _____/s/ Terry M. Henry_

                                                            Terry M. Henry