# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENDO PHARMACEUTICALS INC., et al., | : |
|     Plaintiffs, | : |
|     v. | :   Civ. No. 16-5599 |
| | : |
| FEDERAL TRADE COMMISSION, | : |
|     Defendant. | : |

Diamond, J.              **MEMORANDUM**              October 29, 2018

After the Federal Trade Commission voluntarily dismissed its enforcement action in this Court against Plaintiffs Watson Laboratories and Allergan Finance—and then refiled that same enforcement action in California—Plaintiffs brought this declaratory judgment suit, repeating the arguments made in their motions to dismiss in the original enforcement action. Although the FTC's apparent forum shopping may warrant sanctions, the law does not allow Plaintiffs to challenge the Commission's enforcement decisions by way of declaratory judgment when they can do so in defending against the California enforcement action itself. Accordingly, I will grant the FTC's Motion to Dismiss.

## I.     BACKGROUND

*The Original Action*

On March 30, 2016, proceeding under the FTC and Clayton Acts, the Commission initiated an enforcement action in this Court seeking injunctive and equitable relief against: Endo Pharmaceuticals Inc.; Endo International plc; Teikoku Pharma USA, Inc.; Teikoku Seiyaku Co., Ltd.; Watson Laboratories, Inc.; Allergan plc (the parent company of Watson); and Impax Laboratories, Inc. See F.T.C. v. Endo Pharms. Inc., No. 16-1440, Doc. Nos. 1 (under seal), 32 (redacted); 15 U.S.C. §§ 18, 45(a). The FTC alleged, *inter alia*, that: (1) in June 2010, Endo, which produced "Opana ER," impermissibly agreed to pay Impax to delay market introduction

1

of its generic version of the drug; and (2) in May 2012, Endo and Teikoku, which produced and marketed "Lidoderm," agreed to pay Watson to delay market introduction of its generic, all in violation of Section 5(a) of the FTC Act. See Endo, No. 16-1440, Doc. No. 32 ¶¶ 179–182 (Opana counts), 183–190 (Lidoderm counts); 15 U.S.C. § 45(a). The Commission proceeded under Section 13(b) of the FTC Act, which authorizes the Commission to seek injunctive relief against an entity that is "violating, or is about to violate" any law enforced by the Commission. Endo, No. 16-1440, Doc. No. 32 ¶ 11; 15 U.S.C. § 53(b).

When Teikoku settled with the FTC, I approved a Stipulated Order for Permanent Injunction, dismissing the enforcement action as to Teikoku. Endo, No. 16-1440, Doc. No. 14. The remaining defendants—Endo, Impax, APLC, and Watson—moved to dismiss. Endo, No. 16-1440, Doc. Nos. 57, 58, 61, 69, 70; Fed. R. Civ. P. 12(b)(6), 21. They argued that the FTC could not proceed in federal court because the FTC Act does not authorize the Commission to challenge in court only past conduct. See, e.g., Endo, No. 16-1440, Doc. No. 69-2 at 18 ("[Congress] did not authorize the FTC to bring a federal lawsuit alleging only past violations. . . . Section 13(b), therefore, does not authorize this action and it should be dismissed in its entirety."). They urged that the Commission should instead have pursued its claims in an administrative proceeding pursuant to Section 5(b), which authorizes such proceedings when a party "has been or is using any unfair method of competition." See, e.g., id. at 10, 12; 15 U.S.C. § 45(b). I previously described these Motions to Dismiss "as anything but frivolous." See Endo, 16-1440, Doc. No. 119 at 7.

The defendant drug companies also asked me to sever the Opana and Lidoderm claims because the challenged agreements, underlying circumstances, generic manufacturers, and the drugs themselves had no factual or temporal nexus. Endo, No. 16-1440, Doc. Nos. 57, 58, 61.

In opposing severance, the FTC asked, in the event I severed, to transfer the severed cases to the Northern District of California and the Northern District of Illinois, where related private MDL actions were pending. Endo, No. 16-1440, Doc. No. 73 at 18–20; 28 U.S.C. § 1404(a); In re Lidoderm Antitrust Litig., MDL No. 2521 (N.D. Cal.); In re Opana ER Antitrust Litig., MDL No. 2580 (N.D. Ill.). The Commission admonished that if I did not transfer the severed cases, it would "voluntarily dismiss both actions pursuant to Federal Rule of Civil Procedure 41(a)(1) and refile them separately in the respective district courts." Endo, No. 16-1440, Doc. No. 73 at 18.

On October 20, 2016, I severed the FTC's Opana and Lidoderm claims, but did not transfer the severed cases. Endo, No. 16-1440, Doc. Nos. 119, 120. I took a dim view of the Commission's threatened actions:

> Having chosen to litigate in this District, it comes with ill grace for the FTC to pick up its marbles and play in venues more to its liking. I will not transfer the claims. Should the FTC voluntarily withdraw them, I will entertain Defendants' requests for fees and costs.

Endo, No. 16-1440, Doc. No. 119 at 1.

On October 25, the FTC voluntarily dismissed the action. Endo, No. 16-1440, Doc. No. 121; Fed. R. Civ. P. 41(a)(1)(A)(i). Plaintiffs charged that this was a "transparent effort to prevent this Court from deciding the dispositive issues raised in [the drug companies'] motion to dismiss." (Am. Compl. ¶ 6, Doc. No. 44.)

### *The Declaratory Judgment Suits and FTC's California Enforcement Action*

On October 26, 2016, Endo, Watson, and Impax filed before me declaratory judgment suits against the FTC. (Compl., Doc. No. 1 (Endo and Watson Plaintiffs)); Endo Pharms. Inc. v. F.T.C., No. 16-5600, Doc. No. 1 (Endo and Impax Plaintiffs). Advancing the same arguments made in their Motions to Dismiss the FTC's enforcement action, Plaintiffs sought a declaration "that Section 13(b) of the FTC Act does not authorize the FTC to file an action in federal court

3

against [them]"—or in the alternative, that it does not "authorize the FTC to seek disgorgement or restitution"—involving claims based on the Lidoderm and Opana agreements. (Compl. at 18); Endo, No. 16-5600, Doc. No. 1 at 19.

On January 23, 2017, the Commission filed an enforcement action in the Northern District of California against APLC, Allergan Finance LLC, Watson, and Endo, reasserting claims the FTC had brought before me related to the Lidoderm agreement. FTC v. Allergan plc, No. 17-312 (N.D. Cal.). California filed a parallel action, alleging violations of federal and state antitrust laws. California v. Allergan plc, No. 17-562 (N.D. Cal.). The matters were assigned to the Honorable William Orrick, who is overseeing private party antitrust litigation involving Lidoderm. In re Lidoderm Antitrust Litig., MDL No. 2521 (N.D. Cal.). On January 27, Allergan filed before me its own declaratory judgment suit against the FTC, "seek[ing] relief that tracks that sought by Watson in its . . . Declaratory Judgment Action." Allergan Finance, LLC v. FTC, 17-406, Doc. No. 1 at 2.

On January 24, 2017, Endo and the FTC settled all their litigation, including Endo's claims in its two declaratory judgment suits pending before me. (Doc. No. 31); Endo, No. 16-5600, Doc. No. 28. On January 27, 2017, Impax informed my Chambers that the Commission had initiated an administrative proceeding against the Company some eight days earlier. Endo, No. 16-5600, Doc. No. 32. In light of Endo's settlement and the FTC's initiation of an administrative proceeding against Impax, all parties stipulated to the voluntary dismissal of the Endo–Impax declaratory judgment suit, and Endo voluntarily dismissed its claims against the FTC in the Endo–Watson declaratory judgment suit. (Doc. No. 43); Endo, No. 16-5600, Doc. No. 34; Fed. R. Civ. P. 41(a)(1)(A)(i), (ii).

4

*The Instant Consolidated Declaratory Judgment Suit*

Watson and Allergan are thus the only remaining Declaratory Judgment Plaintiffs, each proceeding in a separate suit, but seeking the same relief. (Compl. at 19); Allergan, No. 17-406, Doc. No. 1 at 20. I consolidated the two suits, and on February 14, 2017, Watson and Allergan filed a Consolidated Amended Complaint. (Am. Compl., Doc. No. 44.)

Plaintiffs "seek[] to preserve the judicial efficiency of having this Court . . . consider the threshold legal issue" of whether the FTC can initiate litigation challenging conduct that occurred entirely in the past. (Id. at ¶ 1.) Although the Commission's California enforcement action is pending, "requir[ing] Declaratory Judgment Plaintiffs to brief—and a different federal court to decide—new motions to dismiss raising the same threshold issues already briefed to this Court . . . would be the height of inefficiency." (Id. ¶¶ 7–8.) Plaintiffs again argue that "[t]he FTC Act does not allow the FTC to pursue allegations in federal court challenging conduct that occurred, and was completed, entirely in the past." (Id. ¶ 10.) Yet, "[n]either the Original Action nor the California Action involve(d) ongoing or imminent future conduct" and instead "focus on the Lidoderm Settlement Agreement, which was signed in 2012." (Id. at ¶¶ 14, 16.) Accordingly,

> [u]nder the Declaratory Judgment Act or, in the alternative, the Administrative Procedure Act, Declaratory Judgment Plaintiffs seek a declaratory judgment that Section 13(b) of the FTC Act does not authorize the FTC to pursue an action in federal court [or seek disgorgement or restitution] against Declaratory Judgment Plaintiffs involving claims based on, or arising from, the Lidoderm Settlement Agreement.

(Id. at ¶¶ 89, 93.)

On March 2, 2017, the FTC moved to dismiss Plaintiffs' claims. The Motion has been fully briefed. (Doc. Nos. 47, 48, 49, 52.) On April 5, Judge Orrick granted Watson and Allergan's Motion to Stay the FTC's enforcement action in California, pending resolution of the

5

instant declaratory judgment suit. (Doc. No. 53); FTC v. Allergan plc, No. 17-312 (N.D. Cal.), Doc. No. 64. On May 9, 2017, Watson and Allergan moved for summary judgment, and the matter was fully briefed. (Doc. Nos. 54, 56, 57, 59.) On January 30, 2018, the FTC renewed its Motion to Dismiss after I ordered additional briefing. (Doc. Nos. 66, 67.)

## II. STANDARDS

I must conduct a two-part analysis. Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, I must accept the plaintiff's factual allegations, and disregard legal conclusions or mere recitations of the elements. Id. I must then determine whether the facts alleged make out a "plausible" claim for relief. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, the burden is on the defendant to show that the plaintiff has failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

## III. DISCUSSION

The FTC argues that: (1) Plaintiffs may not proceed under the Administrative Procedure Act because there is no final FTC action, and Plaintiffs have an adequate remedy in another court; (2) the Declaratory Judgment Act may not be used to circumvent APA requirements; (3) Plaintiffs' claims are not ripe; (4) Plaintiffs' claims are not justiciable because they would not finally and conclusively resolve the entire controversy among the parties; and (5) I should otherwise decline to exercise jurisdiction.

I agree that Plaintiffs have not stated a claim under the APA. Moreover, I will decline to exercise jurisdiction over Plaintiffs' DJA claim because the action is not ripe. In the alternative,

6

I will decline jurisdiction pursuant to the factors established in *Reifer v. Westport Ins. Corp.,* 751 F.3d 129 (3d Cir. 2014).

**A. Failure to State a Claim Under the Administrative Procedure Act**

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The Commission argues that "the APA does not permit this lawsuit because there is no final agency action and Plaintiffs have another adequate remedy in [c]ourt." (Mem. Supp. Mot. Dismiss Am. Compl. 8, Doc. No. 47-1.) Plaintiffs respond that under the Supreme Court's "pragmatic" approach to finality, "the FTC's decision to sue (twice) is final agency action for which Plaintiffs lack another adequate remedy." (Pls.' Opp. Mot. Dismiss 10, Doc. No. 48 (citing United States Army Corps of Eng'rs v. Hawkes Co., 136 S. Ct. 1807, 1815 (2016)).) I disagree.

There are "two conditions that generally must be satisfied for agency action to be 'final' under the APA": (1) "the action must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." United States Army Corps of Eng'rs, 136 S. Ct. at 1813 (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)). The Third Circuit has adopted an "effects-driven approach to finality," by which "the finality of a disposition is determined by its consequences." Shea v. Off. of Thrift Supervision, 934 F.2d 41, 44–46 (3d Cir. 1991) (a party subpoenaed by an agency "faces actual harm only after a successful enforcement action has been brought and, as a result of such action, the subpoenaed party has been ordered to comply"); see also Solar Turbines Inc. v. Seif, 879 F.2d 1073, 1080–81 (3d Cir. 1989) ("determinative factor on finality" was that the "administrative order ha[d] no operative effect on [plaintiff]").

7

Accordingly, even if the Commission "consummated" its decisionmaking by filing the enforcement action, the decision is not final because it does not determine any rights or obligations and has no legal consequences. See Quicken Loans Inc. v. United States, 152 F. Supp. 3d 938, 948–50 (E.D. Mich. 2015) ("filing of an enforcement action" does not "constitute[] final agency action" because the defendants' actions could not "cause any binding legal consequence for [Plaintiff]" and "the FCA action provides an adequate remedy"); City of Oakland v. Holder, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013), aff'd sub nom. City of Oakland v. Lynch, 798 F.3d 1159 (9th Cir. 2015) (DOJ's filing of a federal forfeiture suit was not "final agency action" because it did not "determine any rights or obligations and has not resulted in any legal consequences"); Herman v. Excel Corp., 37 F. Supp. 2d 1117, 1120–21 (C.D. Ill. 1999) (Secretary of Labor's filing of federal enforcement suit for violations of the Fair Labor Standards Act is not final agency action). Rather, "determinations [of rights and obligations] and legal consequences will flow from the [c]ourt's and jury's findings and decisions, not a decision by the [FTC]." City of Oakland, 901 F. Supp. 2d at 1195.

Although Plaintiffs correctly note that they face "an enforcement suit seeking disgorgement and restitution," (Pls.' Opp. Mot. Dismiss 12), this is "different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." F.T.C. v. Standard Oil Co. of California, 449 U.S. 232, 242 (1980) (FTC's issuance of an administrative complaint was not final because it had "no legal force or practical effect upon Socal's daily business other than the disruptions that accompany any major litigation"); cf. Shea, 934 F.2d at 44 ("The ultimate test of reviewability is . . . the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach

legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control.").

Moreover, Plaintiffs "cannot satisfy the second prong of the APA requirement, for almost by definition they have an adequate remedy in a court": moving to dismiss the Commission's California enforcement action on the same grounds they have raised here. N.A.A.C.P. v. Meese, 615 F. Supp. 200, 203 (D.D.C. 1985) (defending against government lawsuit is a "far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief"); see also New Jersey Hosp. Ass'n v. United States, 23 F. Supp. 2d 497, 501 (D.N.J. 1998) ("the ability and opportunity to raise a defense to an FCA action" is "an adequate remedy in a court"); Ass'n of Am. Med. Colleges v. United States, 34 F. Supp. 2d 1187, 1193 (C.D. Cal. 1998) (plaintiffs failed to show that they had "no other adequate remedy in a court" when they could "obtain judicial review by defending a prosecution under the FCA").

Accordingly, Plaintiffs have not stated a claim under the APA. See Treasurer of New Jersey v. United States Dep't of Treasury, 684 F.3d 382, 399–400 (3d Cir. 2012) (citing Chehazeh v. Attorney Gen. of the United States, 666 F.3d 118, 125 n. 11 (3d Cir.2012) (APA Section 704 is not jurisdictional but provides a "limited cause of action for parties adversely affected by agency action"; "if agency action is . . . not final agency action, a plaintiff who challenges such an action cannot state a claim under the APA . . . and the action must be dismissed").

**B. Jurisdiction Under the DJA**

The Commission argues that "without an APA claim, [P]laintiffs cannot invoke the Declaratory Judgment Act to gain entry to the courthouse." (Mem. Supp. Mot. Dismiss Am. Compl. 11.) Plaintiffs respond that the FTC's enforcement action confirms the existence of an

9

actual controversy among the parties. The DJA thus allows Plaintiffs to "borrow" the FTC's cause of action under Section 13(b). (Pls.' Opp. Mot. Dismiss 10 (citing Browne v. Zaslow, 103 F. Supp. 3d 666, 674 (E.D. Pa. 2015) (quotation omitted) ("Federal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law.")).)

I agree that in these circumstances, Plaintiffs may invoke the DJA to establish jurisdiction. Gen. Motors Corp. v. Volpe, 457 F.2d 922, 923 (3d Cir. 1972) (in challenge to non-final agency action, "the court had jurisdiction and the issue was whether it chose to exercise jurisdiction under" the DJA); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128–29 (2007) ("Where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."); Janakes v. United States Postal Serv., 768 F.2d 1091, 1094 (9th Cir. 1985); F.T.C. v. Nash-Finch Co., 288 F.2d 407, 408 (D.C. Cir. 1961).

Because Plaintiffs seek "extra-enforcement" review of the FTC's actions outside Section 13(b)'s review procedure and their claim does not satisfy the *Abbott Laboratories* ripeness test, however, I will decline to exercise jurisdiction. In the alternative, I will decline jurisdiction pursuant to the *Reifer* factors. 751 F.3d at 129.

*Ripeness*

"The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also MedImmune, 549 U.S. at 136 (quoting 28 U.S.C. § 2201(a)) ("The Declaratory

10

Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so."). The Third Circuit has explained that "[w]here Congress has provided a specific statutory administrative procedure, we are reluctant to provide an alternative judicial avenue to a party seeking review of an administrative finding . . . ." Cost Control Mktg. & Mgmt., Inc. v. Pierce, 848 F.2d 47, 49 (3d Cir. 1988); see also Agri-Trans Corp. v. Gladders Barge Line, Inc., 721 F.2d 1005, 1011 (5th Cir. 1983) ("A declaratory judgment action should not be used to circumvent the usual progression of administrative determination and judicial review."); Gen. Fin. Corp. v. F.T.C., 700 F.2d 366, 368 (7th Cir. 1983) ("You may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under 1331 or 1337; the specific statutory method, if adequate, is exclusive."); Parke, Davis & Co. v. Califano, 564 F.2d 1200, 1206 (6th Cir. 1977) ("it was an abuse of discretion to enjoin the FDA in the circumstances of this case where pending enforcement actions" provided an "adequate remedy").

Here, Section 13(b) provides that "whenever the Commission has reason to believe" that a corporation "is violating, or is about to violate" the FTC Act, the Commission "may bring suit in a district court" and "in proper cases . . . may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). Congress has thus provided means to obtain judicial review of the Commission's determination that a corporation has violated the FTC Act. See F.T.C. v. Mfrs. Hanover Consumer Servs., Inc., 543 F. Supp. 1071, 1073 (E.D. Pa. 1982) ("Congress has provided to [plaintiffs seeking equitable relief against the FTC] a remedy, defense to this enforcement proceeding, and their extra-enforcement actions appear premature."). In bringing the instant declaratory judgment suit to contest the grounds of the Commission's enforcement action, Plaintiffs have sought "an alternative judicial avenue" for review. Cost

Control Mktg., 848 F.2d at 49. Under *Cost Control*, however, "the Declaratory Judgment Act may not be utilized to circumvent [the] statutory procedural method" set forth in Section 13(b). Id.

In limited circumstances, pre- or extra-enforcement review may be necessary, providing the controversy is "ripe" for judicial review. Abbott Labs., 387 U.S. at 148; Wearly v. F.T.C., 616 F.2d 662, 667 (3d Cir. 1980); see also Mfrs. Hanover Consumer Servs., 543 F. Supp. at 1073 (quotation omitted) (the ripeness test "appl[ies] to extra-enforcement review rather than merely to pre-enforcement review, for the significant question is not when the instant action was filed or acted upon vis-a-vis the enforcement proceeding, but whether declaratory relief should be made available outside the channels normally provided for the challenge of agency action"). To determine if review is necessary, I must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs., 387 U.S. at 149.

Plaintiffs have not made out hardship: "the impact of the [FTC's enforcement action] falls far short of that of the regulation challenged in *Abbott Laboratories,* which required 'an immediate significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance . . . .'" Gen. Fin. Corp., 700 F.2d at 371 (even though legal question was "adequately focused," declaratory judgment suit was not ripe because there was no immediate injury); see also Wearly, 616 F.2d at 667 (plaintiffs could not satisfy *Abbott Laboratories* hardship test because they "did not establish whether the decision to comply with the [FTC's] subpoena placed them on the horns of a dilemma[,]" and they were "free to await enforcement proceedings" to "raise[] [their] objections"); Mfrs. Hanover Consumer Servs., 543 F. Supp. at 1073 (plaintiffs "face[d] no dilemma warranting relief prior to enforcement

proceedings" where they "face[d] neither immediate civil or criminal penalties nor immediate, substantial costs of compliance").

Moreover, only "[f]inal agency actions involving purely legal questions satisfy the fitness requirement." CEC Energy Co. v. Pub. Serv. Comm'n of Virgin Islands, 891 F.2d 1107, 1110 (3d Cir. 1989) (citing Abbott Labs., 387 U.S. at 149); cf. Bell v. New Jersey, 461 U.S. 773, 778 (1983) ("The strong presumption is that judicial review will be available only when agency action becomes final."); Standard Oil Co., 449 U.S. at 238 (the Commission's determination that it had "reason to believe that [the plaintiff] was violating the Act . . . is subject to judicial review before the conclusion of administrative adjudication *only* if the issuance of the complaint was 'final agency action'" (emphasis added)). As I have discussed, there is no final FTC action. (See supra § III(A).)

In sum, because Plaintiffs' seek to circumvent review pursuant to Section 13(b), and because the matter is not otherwise ripe for review, "relief under the [DJA] is also unavailable." Automated Merch. Sys., Inc. v. Lee, 782 F.3d 1376, 1382 (Fed. Cir. 2015) (quoting Abbott Labs., 387 U.S. at 148) ("The [DJA] provides a "discretionary" remedy that "courts traditionally have been reluctant to apply . . . to administrative determinations that are not final or otherwise ripe for review."). Moreover, "[a] contrary conclusion here would impermissibly employ the general, discretionary declaratory-judgment remedy to override the specific requirements of the APA addressing review of agency action." Automated Merch. Sys., 782 F.3d at 1382; see also Corley v. United States, 556 U.S. 303, 316 (2009) ("[A] more specific statute will be given precedence over a more general one.").

Accordingly, I will decline to exercise jurisdiction over Plaintiffs' DJA claims. See Exxon Corp. v. F.T.C., 588 F.2d 895, 903 (3d Cir. 1978) (declining to exercise jurisdiction over

unripe DJA extra-enforcement action claim); Gen. Motors Corp., 457 F.2d at 924 (same); Mfrs. Hanover Consumer Servs., 543 F. Supp. at 1073 (same).

### *Reifer* Factors

In the alternative, I will decline to exercise DJA jurisdiction based on my consideration of the following factors:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer, 751 F.3d at 146 ("[W]hen determining whether to exercise DJA jurisdiction . . . a district court should guide its exercise of sound and reasoned discretion by giving meaningful consideration to the following factors to the extent they are relevant.") Because the fifth and eighth factors are inapplicable here, I will not consider them.

The first factor weighs against exercising jurisdiction. As the Commission notes, I "cannot assume . . . that [I] will resolve the merits of [Plaintiffs'] complaint in [Plaintiffs'] favor." Swish Mktg., Inc. v. F.T.C., 669 F. Supp. 2d 72, 77–78 (D.D.C. 2009) (declining to exercise jurisdiction over declaratory judgment suit filed by Swish after FTC threatened to bring enforcement action if Swish would not settle; subsequently filed enforcement action was pending). Were I to rule in favor of the FTC—or even in favor of Plaintiffs on their alternative claim that the Commission may not seek disgorgement or restitution—continued litigation in the FTC's California enforcement action is certain. See Morgan Drexen, Inc. v. Consumer Fin. Prot.

Bureau, 785 F.3d 684, 697 (D.C. Cir. 2015) (quotation omitted) ("[A]djudication . . . would not finally settle the controversy and could result in piecemeal litigation if the . . . court ruled in the Bureau's favor, allowing the enforcement action in California to continue."). In such circumstances, a declaration would not resolve the underlying controversy.

The second factor (convenience) is neutral. As Plaintiffs observe, the parties briefed the underlying issue in the original enforcement action before me, and now seek to "preserve . . . judicial efficiency" by having me decide it. (Am. Compl. ¶ 1; Pls.' Opp. Mot. Dismiss 23); see Scottsdale Ins. Co. v. RSE Inc., 303 F.R.D. 234, 240 (E.D. Pa. 2014) ("As to the second factor, the parties are already before us, and thus convenience weighs in favor of exercising our jurisdiction."). The FTC notes, however, Plaintiffs are "already represented by counsel in related litigation" in California, so that jurisdiction otherwise appears to be convenient. (Mem. Supp. Mot. Dismiss Am. Compl. 24.)

With respect to public interest (the third factor), the FTC has argued that exercising jurisdiction over this matter would "deny [it] the choice of venue Congress accorded to it, thereby undermining the legislature's delegation of executive authority." (Renewed Mot. Dismiss 8.) The FTC's "choice of venue" conduct in this matter is hardly something to celebrate. See Endo, No. 16-1440, Doc. No. 142 at 7 ("I continue to be disturbed by the [FTC]'s threat that if I severed, it would voluntarily dismiss the Action and refile the severed claims in venues more to its liking."). I nonetheless agree that the public interest usually requires deference to the FTC's venue choice. See Moog Indus. v. Fed. Trade Comm'n, 355 U.S. 411, 413 (1958) ("[T]he Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically."); Pendleton v.

15

Trans Union Sys. Corp., 430 F. Supp. 95, 97 (E.D. Pa. 1977) ("[T]he judiciary[] [is] reluctan[t] to interfere with the discretion of the executive department."). Accordingly, this factor weighs weakly against exercising jurisdiction.

For many of the reasons that I have already discussed, the fourth (availability and relative convenience of other remedies) and sixth (avoidance of duplicative litigation) factors weigh against exercising jurisdiction. (See supra §§ III(A), III(B)(1).) Indeed, the Third Circuit has observed that "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief . . . we ordinarily give priority to the coercive action, regardless of which case was filed first." Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., 502 F. App'x 201, 206 (3d Cir. 2012) (quoting Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc., 626 F.3d 973, 980 (7th Cir.2010)); see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 552 (6th Cir. 2007) (quotation omitted) ("Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit."); Swish Mktg., 669 F. Supp. 2d at 80 (quotation omitted) ("Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified.").

As I have discussed, this is particularly significant where the natural plaintiff is the Government: "Judicial review of the averments in the [FTC's] complaints should not be a means of turning prosecutor into defendant before adjudication concludes." Standard Oil Co., 449 U.S. at 243; Buntrock v. S.E.C., 347 F.3d 995, 997 (7th Cir. 2003) (plaintiff's "attempt to derail the

SEC's suit by filing his own suit against the SEC rather than seeking relief in that suit has no basis in law or common sense" as "defendants must not be allowed to turn every case in which there is a defense into two cases").

Although Plaintiffs correctly note that courts also "routinely favor first-filed actions," in these circumstances—where Watson filed its declaratory judgment suit in anticipation of the FTC's refiling the enforcement action, and Allergan filed its declaratory judgment suit *after* the FTC brought the California enforcement action—it is appropriate to give priority to the coercive action. (Pls.' Opp. Mot. Dismiss 24.)

Finally, in considering the seventh factor, I am compelled again to discuss the unsavory appearance of the FTC's conduct. See Wearly, 616 F.2d at 663 (disapproving of the FTC's "precipitous[]" and "curious" litigation tactics but determining that declaratory judgment suit was not ripe). Had the Commission in the first instance filed its enforcement action in another district, its venue choice would have been unremarkable. It chose to proceed in this District, however, and threatened to withdraw and refile only after it anticipated the possibility of an unfavorable ruling. In carrying out its threat, the FTC has wasted the resources of Plaintiffs and this Court, and may well have abused Rule 41. See, e.g.,. Vaqueria Tres Montijas, Inc. v. Rivera Cubano, 230 F.R.D. 278, 279 (D.P.R. 2005) (citations omitted) (imposing sanctions where plaintiff voluntarily withdrew under Rule 41 and refiled to "obtain[] a different judge after the judge decided a major point against them"); see also Landau v. Viridian Energy PA LLC, --- F. Supp. 3d ---, 2017 WL 3581323 (E.D. Pa. Apr. 3, 2017) ("The practice of judge-shopping raises serious questions of professional ethics and undermines trust in the court's impartiality. Some consequence should follow."); Tennessee v. Gibbons, No. 16-718, 2017 WL 4535947, at *4 (M.D. Tenn. Oct. 10, 2017) (criticizing a "blatant express[ion]" of judge-shopping).

17

Whether the FTC's actions are sufficiently vexatious to warrant the imposition of costs or sanctions is a question Plaintiffs have yet to raise. See 28 U.S.C. § 1927; Fed. R. Civ. P. 11, 41(d).

Regardless of the questionable nature of the FTC's tactics, I remain bound by controlling authority authorizing the Commission voluntarily to dismiss its original enforcement action. In re Bath & Kitchen Fixtures Antitrust Litig., 535 F.3d 161, 165 (3d Cir. 2008); see also Bechuck v. Home Depot U.S.A., Inc., 814 F.3d 287, 293 (5th Cir. 2016) ("It is not uncommon for plaintiffs to use voluntary dismissal to secure their preferred forum."). Moreover, although Plaintiffs are understandably frustrated by the FTC's decision to dismiss and refile its enforcement action, Plaintiffs' proposed remedy would confound the policy underlying the DJA:

> Where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.

Swish Mktg., 669 F. Supp. 2d at 79 (quotations omitted).

In these circumstances, I conclude that the seventh factor favors neither side.

In sum, most of the *Reifer* factors weigh against exercising jurisdiction in this case, although not resoundingly so. Accordingly, I will, in the alternative, decline to exercise jurisdiction on this ground.

## IV. CONCLUSION

Because Plaintiffs do not challenge a "final agency action for which there is no other adequate remedy in a court," I will dismiss their APA claim. See 5 U.S.C. § 704. I will decline otherwise to exercise jurisdiction under the DJA. Accordingly, I will grant the FTC's Motion to Dismiss. In light of my decision, I will not address the FTC's contention that Plaintiffs' claims are not justiciable.

An appropriate Order follows.

*/s/ Paul S. Diamond*
October 29, 2018                                                                                 Paul S. Diamond, J.